# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| CHRISTOPHER A. TAFOLLA | § |
| | § |
| v. | §    CIVIL ACTION NO. 3:24-CV-0331-S |
| | § |
| J. RODERMUND | § |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Officer J. Rodermund's Motion and Brief to Dismiss ("Motion") [ECF No. 26]. The Court has reviewed the Motion, Plaintiff Christopher A. Tafolla's Response to the Motion ("Response") [ECF No. 29], Plaintiff's Brief in Support of the Response ("Response Brief") [ECF No. 30], Defendant's Reply Brief Supporting the Motion [ECF No. 31] and the applicable law. For the following reasons, the Court **DENIES** the Motion.

## I. BACKGROUND

This is a Section 1983 case alleging excessive force. On February 27, 2022, Plaintiff claims he was driving down a street when he saw two police cars blocking an exit he was trying to use. App. Supporting Mot. ("Defendant's Appendix") [ECF No. 34] 6.[1] According to Plaintiff, he pulled up to the police cars to see if they would move, but when they did not, Plaintiff "[r]eversed and turned to go a diff[e]rent way." *Id.* Plaintiff alleges that as he "approached a stop sign," one of the police officers tried to pull Plaintiff over. *Id.* Instead of pulling over, however, Plaintiff engaged in a vehicle pursuit with that police officer. *Id.*; Pl.'s First Am. Compl. ("Amended Complaint")

---

[1] In its analysis, the Court takes judicial notice of Plaintiff's factual assertions in another case Plaintiff previously brought in the Fort Worth Division of the Northern District of Texas, *Tafolla v. Wacker*, Civ. A. No. 4:22-CV-00450-P, which were filed with the Court in Defendant's Appendix. *See Norris v. Hearst Tr.*, 500 F3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." (citation omitted)). Plaintiff opposes consideration of any previous factual allegations made outside of the current live pleading in this case. Resp. Br. 3-4 (citations omitted). The Court need not address Plaintiff's argument because the Court's holding would remain the same regardless of whether it considered Plaintiff's factual assertions in this previous case.

[ECF No. 21] ¶ 8. Plaintiff alleges that sometime during this pursuit, he "slowed down[,] got on the sidewalk[, and] went around the other cars slowly." Def.'s App. 6. At this moment, one of the police officers allegedly drove his police car into Plaintiff's car. *Id.* Plaintiff then continued the car chase. *Id.* at 6-7. At one point, Plaintiff stopped at a railroad track due to a passing train, so he jumped out of his car and ran into a field behind a restaurant. *Id.* at 7; Am. Compl. ¶ 10. Defendant drove his police car "through the fence behind" the restaurant and then chased Plaintiff. Am. Compl. ¶ 11. Plaintiff ran into another field, where he alleges that no other people were present. *Id.* ¶ 13. Once in the field, Plaintiff asserts that he stopped running and "put his hands up in surrender." *Id.* ¶ 14. Then, according to Plaintiff, Defendant tackled Plaintiff, "got on top of him, and "proceeded to repeatedly punch [Plaintiff] in his head, ribs, and back." *Id.* ¶¶ 15, 19. Defendant allegedly "taunted" Plaintiff by stating "you like that" while punching him and then, when Plaintiff asked why he was being hit, Defendant replied that he "should not have run." *Id.* ¶¶ 21-23. Plaintiff claims that he was not holding a weapon when Defendant tackled him, *id.* ¶ 16, did not have anything in either of his hands, *id.*, was not resisting arrest once he was tackled, *id.* ¶ 18, and "did not strike Defendant . . . or fight back in any way," *id.* ¶ 20. At one point during his arrest, Plaintiff overheard other police officers say that Plaintiff was trying to approach a "stolen semi." Def.'s App. 8. Plaintiff denies any knowledge of a "stolen semi." *Id.* Eventually, Plaintiff was taken to the emergency room "where he lost consciousness." Am. Compl. ¶ 34. Plaintiff states he suffered "severe injuries including spine tenderness, abrasions of multiple sites, rib tenderness, a minimally displaced right lateral eighth rib fracture and loss of height of the T4 or T5 of his vertebral body." *Id.* ¶ 35.

As a result of the alleged facts describe above, Plaintiff brings against Defendant a constitutional claim pursuant to 42 U.S.C. § 1983 for excessive use of force in violation of the Fourth Amendment. Am. Compl. ¶¶ 37-75.

## II. LEGAL STANDARD

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007) (citation omitted). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. *See Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977). It only determines whether the plaintiff has stated a claim upon which relief can be granted. *See id.*

## III. ANALYSIS

Defendant seeks dismissal of Plaintiff's Section 1983 claim against him based on qualified immunity.[2] Accepting well-pleaded facts as true and viewing them in the light most favorable to the plaintiff, the Court concludes that Plaintiff has plausibly alleged a Section 1983 excessive force claim against Defendant and that Defendant is not entitled to qualified immunity at this stage of this litigation. "Qualified immunity protects officers from suit unless their conduct violates a clearly established statutory or constitutional right." *Edmiston v. Borrego*, 75 F.4th 551, 558 (5th Cir. 2023) (cleaned up), *cert. denied sub nom. Crandel v. Hall*, 144 S. Ct. 1002 (2024). When an official asserts qualified immunity, "[i]t is the plaintiff's burden to demonstrate that qualified immunity is inappropriate." *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023) (alteration in original) (citation omitted). The plaintiff must plead facts sufficient to create the reasonable inference "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Edmiston*, 75 F.4th at 558 (citation omitted). The Court addresses each prong of the qualified immunity analysis in turn.

### *A. Violation of a Constitutional Right*

Plaintiff has plausibly alleged that Defendant violated the Fourth Amendment by using excessive force against Plaintiff. To plead an excessive force claim, a plaintiff must plead (1) an injury (2) that resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable. *Beroid v. LaFleur*, No. 22-30489, 2023 WL 3034706, at *2 (5th Cir. Apr. 21, 2023) (citing *Ratliff v. Aransas County*, 948 F.3d 281, 287 (5th Cir. 2020)). "Our precedents recognize that inquiries regarding whether a use of force was 'clearly

---

[2] In the Motion, Defendant requests that all discovery be stayed pending a ruling on his qualified immunity defense. Mot. 21 (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Because the Court denies the Motion, Defendant's request for a stay of discovery is now moot. The Court will require the parties to attend a Federal Rule of Civil Procedure 16 Scheduling Conference by separate order.

4

excessive' or 'clearly unreasonable . . . are often intertwined,' and we consider those questions together . . . ." *Darden v. City of Fort Worth*, 880 F.3d 722, 728 (5th Cir. 2018) (first alteration in original) (quoting *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017)).

As to the first element, Defendant does not dispute that Plaintiff plausibly alleged that he suffered injuries, and indeed, the Amended Complaint alleges in detail Plaintiff's "severe injuries." Am. Compl. ¶ 35. Accordingly, Plaintiff has plausibly alleged the first element of an excessive force claim.

As to the second and third elements, the Court concludes that Plaintiff has plausibly alleged that Defendant's use of force against Plaintiff was clearly excessive and clearly unreasonable. The Court's inquiry into the excessiveness and reasonableness of the use of force depends on "the facts and circumstances of each particular case." *Darden*, 880 F.3d at 728 (quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). This analysis "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021) (quoting *Graham*, 490 U.S. at 396-97). "In making this determination, a court should consider the totality of the circumstances, 'including [the following *Graham* factors:] the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Darden*, 880 F.3d at 728-29 (quoting *Graham*, 490 U.S. at 396). The Court examines each of the *Graham* factors in turn.

The first *Graham* factor, the severity of the crime at issue, weighs in favor of finding that Defendant's use of force was not excessive. When the police attempted to pull Plaintiff over, Plaintiff drove away and led the police on a vehicle pursuit. Def.'s App. 6; Am. Compl. ¶ 8. Leading law enforcement on a vehicle pursuit is a severe offense, especially where, as Plaintiff admits, he was driving around other cars. *See Salazar v. Molina*, 37 F.4th 278, 281-82 (5th Cir. 2022) (citation omitted); Def.'s App. 6.

For the next two *Graham* factors, the Court considers Defendant's alleged use of force in two separate phases: Defendant's initial tackle of Plaintiff taking him to the ground and then his subsequent repeated punching of Plaintiff once Plaintiff had been taken down. The Court first addresses the second and third *Graham* factors as to Defendant's tackle of Plaintiff.

The second *Graham* factor, whether Plaintiff posed an immediate threat, weighs in favor of finding that Defendant's tackle of Plaintiff was not excessive. "[W]hat preceded the surrender matters," and "when a suspect has put officers and bystanders in harm's way to try to evade capture, it is reasonable for officers to question whether the now-cornered suspect's purported surrender is a ploy." *Salazar*, 37 F.4th at 282. And a suspect on the run, even when he appears to surrender, cannot expect to the "same Fourth Amendment protection from . . . force he would have received had he promptly surrendered in the first place." *Ramirez v. Martin*, No. 22-10011, 2022 WL 16548053, at *3 (5th Cir. Oct. 31, 2022) (alteration in original) (quoting *Salazar*, 37 F.4th at 282-83). Plaintiff led the police on a pursuit by vehicle and then on foot, and thus it was reasonable for Defendant to question Plaintiff's surrender, still perceive Plaintiff as an immediate threat, and thus decide that tackling Plaintiff to the ground was necessary. *See id.* at *3 (finding that the second *Graham* factor weighed in the officer's favor where the officer pushed to the ground a suspect who had engaged in a vehicle pursuit but then surrendered).

6

For many of the same reasons, the third *Graham* factor, whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight, weighs in favor of finding that Defendant's tackle of Plaintiff was not excessive. *See Escobar v. Montee*, 895 F.3d 387, 395-96 (5th Cir. 2018) (observing that "the third *Graham* factor . . . largely folds into the second" where the suspect had led police on a chase and then surrendered); *Salazar*, 37 F.4th at 284 (acknowledging that the "second and third *Graham* factors implicate the same facts" in a case where the suspect led police on a vehicle pursuit and then surrendered). Officers are "constitutionally justified or entitled to qualified immunity for taking suspects to the ground in response to forms of physical resistance," *Buehler v. Dear*, 27 F.4th 969, 988 (5th Cir. 2022) (citation omitted), and other forms of non-compliance, *see Priest v. Grazier*, 860 F. App'x 343, 347 (5th Cir. 2021) (citation omitted) (holding that officers were entitled to qualified immunity where they pulled the plaintiff out of the car and forced him to the ground when he "did not comply with their repeated instructions" to get out of the car). Here, Plaintiff had evaded arrest and led the police on an extended pursuit by vehicle and then on foot. He could not reasonably expect to receive the same protection from force he would have received had he initially complied with the police officer's attempt to pull him over. *See Ramirez*, 2022 WL 16548053, at *3. Accordingly, in considering all three *Graham* factors, the Court finds that Defendant's tackle of Plaintiff was neither excessive nor unreasonable. *See id.* at *3-4.

However, once Plaintiff was tackled to the ground, Defendant allegedly continued to punch Plaintiff in the head, ribs, and back. The last two *Graham* factors weigh in favor of finding that this use of force was excessive and unreasonable. "Force must be reduced once a suspect has been subdued." *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 335 (5th Cir. 2020) (citation omitted). And the Fifth Circuit has noted that being "'subdued' does not mean 'handcuffed,'" but

7

rather means that "the suspect lacks any means of evading custody—for example, by being pinned to the ground by multiple police officers." *Id.* (citation omitted).

Taking Plaintiff's factual allegations as true, after Defendant tackled Plaintiff to the ground and got on top of him, Plaintiff was subdued. And according to Plaintiff, he never struck back at Defendant and had no weapon on him. As to the second *Graham* factor, Plaintiff was no longer an immediate threat once subdued. He had already surrendered and been subdued, was not suspected of committing a violent crime, and allegedly had no weapon on him. *See Cooper v. Brown*, 844 F.3d 517, 522-23 (5th Cir. 2016) (finding that the plaintiff was no longer an immediate threat where he was not suspected of committing a violent crime, had surrendered, and had no weapon on him). And as to the third *Graham* factor, Plaintiff was allegedly no longer resisting or evading arrest once he was taken down. *See id.* at 523. At this point, Defendant was required to reduce his use of force. *Joseph*, 981 F.3d at 335 (citation omitted). Instead, Defendant appears to have escalated it. Based on his pleadings, the Court concludes that Plaintiff has plausibly alleged that this increased use of force was excessive and unreasonable and thus in violation of the Fourth Amendment. *See Anderson v. McCaleb*, 480 F. App'x 768, 772-73 (5th Cir. 2012) (reversing a grant of summary judgment in police officers' favor where, after a pursuit by vehicle and on foot, the officers continued to punch and tase the plaintiff even after the plaintiff surrendered and was taken to the ground by an initial tase); *Shefeik v. Busby*, 836 F. App'x 315, 315-17 (5th Cir. 2021) (reversing a grant of summary judgment in police officers' favor where the plaintiff presented uncontradicted evidence that after a pursuit by vehicle and on foot, the officers severely beat the plaintiff in the face even after he surrendered and was partially handcuffed); *cf. Ramirez*, 2022 WL 16548053, at *3 (finding that an officer's use of force was not excessive, as once the plaintiff

surrendered, the officer "pushed [the plaintiff] to the ground and then refrained from using additional force once [the plaintiff] was subdued" (citation omitted)).

In finding that Plaintiff plausibly alleged a constitutional violation, the Court notes that Plaintiff may not be able to prove his allegations and that Defendant may well prevail at the summary judgment stage once evidence is presented. However, the Court's task at the motion to dismiss stage is to examine only the Plaintiff's complaint to determine whether Plaintiff plausibly pleaded a constitutional violation, taking all alleged facts as true. Here, with respect to the Defendant's alleged repeated punching of Plaintiff after Plaintiff had already been tackled to the ground, Plaintiff has plausibly pleaded a Fourth Amendment violation.

### B. Clearly Established Law

However, plausibly pleading that Defendant used excessive force does not alone defeat a qualified immunity defense. Plaintiff must also demonstrate that, at the time of the incident—here, February 27, 2022—the law was "clearly established" that Defendant's alleged use of force was excessive. *Joseph*, 981 F.3d at 336 (citing *Saucier v. Katz*, 533 U.S. 194, 199 (2001)). Under this second prong of the qualified immunity analysis, courts "determine whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Griggs v. Brewer*, 841 F.3d 308, 312-13 (5th Cir. 2016) (citation omitted); *see also Mullenix v. Luna*, 577 U.S. 7, 11 (2015) ("A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." (cleaned up)). "And a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014) (citation omitted). Accordingly, "[Plaintiff] must identify a case that

9

put [Defendant] on notice that his specific conduct was unlawful." *Salazar*, 37 F.4th at 285 (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021)).

Plaintiff directs the Court in his Amended Complaint and Response Brief to *Cooper*, 844 F.3d 517, a Fifth Circuit opinion issued in 2016. Am. Compl. ¶¶ 48-55 (citing *Cooper*, 844 F.3d at 521-23 & n.2); Resp. Br. 8-9 (same). In *Cooper*, the plaintiff was pulled over by a police officer on suspicion of driving under the influence. 844 F.3d at 521. During the stop, the plaintiff fled on foot into a neighborhood. *Id.* The defendant police officer subsequently arrived as backup with a police dog. *Id.* The dog discovered the plaintiff's hiding spot in the neighborhood and then proceeded to bite the plaintiff for "one to two minutes." *Id.* While the dog's attack was occurring, the plaintiff did not attempt to flee or strike the dog, and the plaintiff had his hands on the dog's head. *Id.* The defendant testified that "he could see [the plaintiff's] hands and could appreciate that he had no weapon." *Id.* Despite the plaintiff's compliance, the defendant did not order the dog to stop biting the plaintiff until the plaintiff was in handcuffs. *Id.* Under these facts, the Fifth Circuit held that the police officer's use of force was excessive. *Id.* at 522-24. While the Fifth Circuit found that driving under the influence is a serious offense, it found that the plaintiff did not pose an immediate threat to the officer and that the plaintiff was not actively resisting arrest or attempting to flee once the dog bit him. *Id.* The Fifth Circuit, therefore, held that "permitting a dog to continue biting a compliant and non-threatening arrestee" was objectively unreasonable. *Id.* at 524. And the Fifth Circuit concluded that the plaintiff's right was clearly established, observing that "[o]ur caselaw makes certain that once an arrestee stops resisting, the degree of force an officer can employ is reduced." *Id.*

The Court agrees with Plaintiff that, like the officer's continued use of force in *Cooper*, Defendant's alleged continued punching of Plaintiff once he was subdued and no longer resisting

10

or evading arrest violated clearly established law. However, because *Cooper* concerns a dog bite, the Court finds it instructive to look at other cases because it need not "limit [its] analysis to the cases cited by Plaintiff[]." *Joseph*, 981 F.3d at 338. Surveying case law at the time of the incident here, the Court concludes that the law was clearly established that an officer's alleged continued punching of a suspect even after the suspect was subdued and no longer resisting or evading arrest is clearly excessive and violates the Fourth Amendment. *See Joseph*, 981 F.3d at 336-43; *Anderson*, 480 F. App'x at 773; *Shefeik*, 836 F. App'x at 315-17.[3]

In *Joseph*, a Fifth Circuit opinion from 2020, a school official called the police on a mentally ill man, the decedent in this case, who was suspiciously standing outside the school gate. 981 F.3d at 326. Two school resource officers approached the decedent, but he immediately ran away from the officers. *Id.* One of the officers radioed other officers in the area to report the decedent. *Id.* Other police officers, who had heard the radio transmission, saw the decedent near a convenience store and "gave loud verbal commands for [him] to come to them." *Id.* Instead, the decedent entered the store, and the officers followed him in. *Id.* One of the officers instructed the decedent to get on the ground, but instead, the decedent "jumped over the checkout counter." *Id.* The decedent immediately went to the ground and "covered his face with his hands and assumed the fetal position." *Id.* Multiple officers physically subdued him by placing their bodies onto the decedent or holding him down. *Id.* Then, multiple officers attempted to drag the decedent from behind the checkout counter. *Id.* at 327. Through all this, one of the officers tased the decedent multiple times, struck him with a baton twice, and punched him in the head three times. *Id.*

---

[3] Unpublished opinions "cannot clearly establish the law but can illustrate or guide us to such authority, by restating what was clearly established in precedents they cite or elsewhere." *Joseph*, 981 F.3d at 341 n.105 (cleaned up). Therefore, the Court considers *Anderson*, 480 F. App'x 768, and *Shefeik*, 836 F. App'x 315, not as precedential opinions that clearly establish the law but rather as illustrative opinions that restate already clearly established law and apply it to similar facts.

11

at 326-27. A second officer also kicked the decedent "twelve to thirteen times." *Id.* at 327. Medical personnel took the decedent to the hospital, where he died from his injuries two days later. *Id.*

The Fifth Circuit affirmed the district court's holding that genuine issues of material fact existed as to whether the two officers' use of force was excessive. *Id.* at 341-42. In its holding, the Fifth Circuit concluded that the two officers "violated clearly established law by failing to attempt less forceful alternatives and by continuing to inflict force despite [the decedent] committing no crime, posing no threat, and giving no active resistance." *Id.* at 341. In support of its holding, the Fifth Circuit pointed to the clearly established law that "[o]fficers engage in excessive force when they physically strike a suspect who is not resisting arrest." *Id.* at 342 (citing *Darden*, 880 F.3d at 732).

In *Anderson*, an unpublished Fifth Circuit opinion from 2012, two police officers attempted to stop the plaintiff while he was driving his car. 480 F. App'x at 769. The plaintiff, however, drove to the back of an apartment complex, exited his car, and ran. *Id.* According to the plaintiff's testimony, he eventually stopped running and "turned around and held out his hands in an attempt to surrender," while he was "holding an iPod," which the officers believed "resembled a weapon." *Id.* One of the officers shot the plaintiff with a taser, and the plaintiff fell to the ground. *Id.* After this takedown, the other officer "got on top of [the plaintiff] and hit him with a closed fist," while the first officer "continued to use the taser, shocking him five or six times." *Id.* The plaintiff testified that this use of force occurred before he was handcuffed and also "testified that he did not resist the officers' attempt to arrest him" after surrendering. *Id.* The Fifth Circuit held that, taking the plaintiff's evidence as true, the officers' conduct violated clearly established law as they "should have known that [they] could not continue to shock [the plaintiff] with the taser after he was no longer resisting arrest" and that "[they] could not beat [the plaintiff] after he stopped

resisting arrest." *Id.* at 773 (citing *Bush v. Strain*, 513 F.3d 492, 501-02 (5th Cir. 2008)). Accordingly, the Fifth Circuit reversed the district court's grant of summary judgment on the officers' qualified immunity defense and remanded the case. *Id.* at 772.

In *Shefeik*, an unpublished Fifth Circuit opinion from 2021, the plaintiff surrendered following "a lengthy car chase and brief foot pursuit" with police officers. 836 F. App'x at 315. But according to the plaintiff's testimony, the police officers "nevertheless beat him in the face with a flashlight, causing severe injuries." *Id.* The Fifth Circuit observed that although the defendant officers provided dashcam footage of the arrest, it did not show the officers' interaction with the plaintiff once he surrendered, which occurred off camera. *Id.* at 315-16. Accordingly, the Fifth Circuit held that this dashcam footage did not contradict the plaintiff's testimony that the "deputies severely beat[] him in the face after he surrendered and was partially handcuffed." *Id.* at 316. And thus, it held that a fact issue existed as to whether the officers' use of force was excessive, vacated the district court's grant of summary judgment on the qualified immunity defense, and remanded. *Id.* at 316-17. Further, the Fifth Circuit found that if, as the plaintiff claimed, the officers "continued applying force despite his lack of resistance," such actions would violate clearly established law. *Id.* at 317 n.2. It noted that "[o]ur precedent clearly establishes that 'once a suspect has been handcuffed and subdued, and is no longer resisting, an officer's subsequent use of force is excessive.'"[4] *Id.* (quoting *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015)).

---

[4] It is inconsequential to the Court's analysis that Plaintiff does not allege that he was handcuffed while Defendant beat him. As the Court has already observed, it is clearly established law that "[f]orce must be reduced once a suspect has been *subdued*." *Joseph*, 981 F.3d at 335 (emphasis added) (citation omitted). "Subdued" can mean being handcuffed but also can mean "being pinned to the ground by multiple officers." *Id.* (citation omitted). Here, Plaintiff alleges that Defendant tackled him to the ground and got on top of him and thus, the Court finds that Plaintiff plausibly alleges he was subdued.

Considering *Cooper*, *Joseph*, *Anderson*, and *Shefeik*, the Court concludes that at the time of Plaintiff's arrest, it was clearly established law that an officer cannot repeatedly punch a suspect once that suspect is already subdued and no longer resisting or evading arrest. *Cooper*, 844 F.3d at 524; *Joseph*, 981 F.3d at 341-42; *Anderson*, 480 F. App'x at 773; *Shefeik*, 836 F. App'x at 316-17. But here, once Defendant tackled Plaintiff to the ground and subdued him, Defendant allegedly began punching Plaintiff in the head, ribs, and back. And according to Plaintiff, Defendant did so even though Plaintiff allegedly was no longer resisting arrest and not holding a weapon. A reasonable officer would have known that this continued, escalating use of force violated Plaintiff's Fourth Amendment right. Accordingly, the Court concludes that Plaintiff has plausibly alleged that Defendant is not entitled to qualified immunity at this stage.

In the Motion, Defendant also argues that Plaintiff is not entitled to punitive damages solely because Plaintiff fails to state an excessive force claim against Defendant. *See* Mot. 20-21. As the Court is not dismissing Plaintiff's excessive force claim, the Court denies the Motion as to punitive damages at this time.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss [ECF No. 26].

**SO ORDERED.**

SIGNED March 19, 2025.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**